United States District Court
Southern District of Texas
**ENTERED**
November 06, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ESTEBAN RODRIGUEZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:26-CV-603 |
| | § | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | § | |
| | § | |
| | § | |
| Respondents. | § | |

**ORDER ADOPTING REPORT AND RECOMMENDATION**

Petitioner Esteban Rodriguez is a native of Cuba currently detained by Immigration and Customs Enforcement and subject to a final order of removal. Petitioner holds protection from removal as to Guatemala. In this habeas action, Petitioner seeks his release based upon *Zadvydas v. Davis*, 533 U.S. 678 (2001).

Since May 14, 2026, Petitioner has been detained subject to a final order of removal. On May 29, Petitioner filed this habeas action, alleging his *Zadvydas* claim. (Pet., Doc. 1) Respondents move for dismissal of the Petition or, alternatively, for summary judgment. (Motion, Doc. 8)

On September 21, a Magistrate Judge issued a Report and Recommendation (Doc. 12) recommending that the Court deny the Petition, deny as moot Respondents' Motion for Summary Judgment, and direct the Clerk of Court to close the case.

Petitioner timely filed objections to the Report and Recommendation. (*See* Objs., Doc. 13) When a party objects to a Report and Recommendation, the district court applies *de novo* review as to the objected-to portions of the Report and Recommendation. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

The Court has reviewed the Report and Recommendation and agrees with its analysis and its conclusion that Petitioner's claims based on *Zadvydas* are not yet ripe.

Petitioner objects to the conclusion by arguing that for purposes of the *Zadvydas* analysis, the re-detention of an alien does not re-start the six-month period that the Supreme Court considered presumptively reasonable. According to Petitioner, "[b]ecause his removal period commenced in 2011, the presumptively reasonable period expired in 2011 – long before his May 2026 re-detention." (Objs., Doc. 13, 7) In support of his argument, Petitioner cites several district court cases supporting his application of *Zadvydas*. (*Id.* at 3–5 (citing and discussing cases))

The Court disagrees. The Supreme Court in *Zadvydas* did not address how the release and re-detention of an alien subject to a final order of removal affects the length of the constitutionally-permissible detention period.[1] But the Supreme Court explained that courts should measure the reasonableness of the length of detention "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 680. With this principle in mind, the Supreme Court recognized that Congress understood when amending the relevant statute in 1996 that some removals would take longer than 90 days. *Id.* The Supreme Court reasoned, however, that a six-month presumptively reasonable period of detention appropriately balanced the demands of the Constitution with the needs of the Executive Branch to effectuate removal of an alien. *Id.* at 701. The Supreme Court recognized this period as presumptively reasonable to "grant the Government appropriate leeway" in its removal efforts and to "to limit the occasions" when courts would need to gauge whether the Executive Branch's continuing detention of an alien had exceeded constitutional boundaries. *Id.* at 700–701.

After the six-month period elapses and the Executive Branch has been unable to effectuate removal, the alien can attempt to demonstrate that no significant likelihood of removal in the

[1] The statute, 8 U.S.C. § 1231, also does not speak to the issue, as its language requires ongoing detention. The *Zadvydas* doctrine represents a judicially-imposed limitation "to avoid a serious constitutional threat" that indefinite detention would present. *Zadvydas,* 533 U.S. at 699; *see also id.* at 689 ("In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal period detention to a period reasonably necessary to bring about that alien's removal from the United States.")).

reasonably foreseeable future exists. If successful, the Executive Branch must rebut that showing or release the alien, subject to appropriate conditions of supervision.

Of course, an alien released under *Zadvydas* remains subject to a final order of removal. The inability of the Executive Branch to remove the alien does not render the individual admissible. Presumably, the Executive Branch would continue with its efforts to satisfy its obligation to remove an alien who an Immigration Judge has ordered removed. And upon reaching that point, the Executive Branch would re-detain the alien to comply with the statute's "basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* at 699.

In such circumstances, the Court finds no grounds in *Zadvydas* for concluding that the re-detained alien would immediately be able to challenge his detention as constitutionally impermissible.[2] Rather, the re-detention of the alien supports the renewed efforts of the Executive Branch to effectuate the removal of the alien, and the purposes of detention under Section 1231(a)(6) would apply anew. The principles that led the Supreme Court in *Zadvydas* to recognize a six-month presumptively-reasonable period of detention would also equally apply, as the Executive Branch requires time to finalize the arrangements for the removal of an individual. If those efforts prove unsuccessful for six months, the alien could then initiate a challenge under *Zadvydas*.

Petitioner raises the specter of Respondents releasing and rapidly re-detaining an alien solely to restart the six-month period under *Zadvydas*, and doing so indefinitely, thus creating permanent detention. The Court agrees that some factual records could reveal such gamesmanship by the Executive Branch and would permit courts to view the record as representing one continuous effort at removal, not subject to repeated six-month periods under

[2] Other district courts that have considered this issue have reached the same conclusion. *See, e.g., Bayat v. Bradford,* 812 F.Supp.3d 680, 683 (E.D. Tex. 2025) ("[T]he Court is not persuaded that the six month clock is incapable of resetting after re-detention."); *but see, e.g., Villanueva v. Tate,* 801 F.Supp.3d 689, 702 (S.D. Tex. 2025) ("The government's contention that it may avoid the holding of *Zadvydas* and re-start the six-month presumptively constitutional detention clock by simply releasing and then re-detaining a noncitizen has no basis in either the statutes, the regulations, or *Zadvydas* itself.").

*Zadvydas*. The passage of years, however, between the release and re-detention of an alien would not support such a conclusion. And in the present case, Petitioner enjoyed fifteen years of liberty between his release in 2011 and his re-detention in 2026. In no manner does this factual record support the conclusion that Respondents released and re-detained Petitioner to circumvent the limitations that *Zadvydas* established.

For these reasons, the Court **OVERRULES** Petitioner Esteban Rodriguez's objections to the Report and Recommendation (Doc. 12), which the Court **ADOPTS**. As a result, it is:

**ORDERED** that Petitioner Esteban Rodriguez's Petition for Writ of Habeas Corpus and Request to Show Cause (Doc. 1) is **DENIED** without prejudice; and

**ORDERED** that Respondents' Motion to Dismiss or Alternatively, Motion for Summary Judgment (Doc. 8) is **DENIED** as moot.

Each party shall bear its own fees and costs.

This is a final and appealable order.

The Clerk of Court is directed to close this case.

Signed on November 6, 2026.

Fernando Rodriguez, Jr.

Fernando Rodriguez, Jr.
United States District Judge